Jeffrey W. Dulberg (State Bar No. 181200)
John W. Lucas (State Bar No. 271038)
Jeffrey P. Nolan (State Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4003
Telephone: 310.277.6910
Facsimile: 310.201.0760
E-mail:  jdulberg@pszjlaw.com
           jlucas@pszjlaw.com
           jnolan@pszjlaw.com

Attorneys for Plaintiff, Bradley D. Sharp,
Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LESLIE KLEIN,<br><br>                Debtor. | Case No.: 23-10990-SK<br><br>Adv. Case No.: 2:24-ap-01140-SK<br><br>Chapter 11 |
| BRADLEY D. SHARP, Chapter 11 Trustee,<br><br>                Plaintiff,<br><br>v.<br><br>LESLIE KLEIN, an individual, THE SECOND AMENDED KLEIN LIVING TRUST, a trust, THE MARITAL DEDUCTION TRUST OF ERIKA KLEIN, a trust, THE SURVIVOR'S TRUST OF LESLIE KLEIN, a trust, and BARBARA KLEIN, an individual,<br><br>                Defendants. | **NOTICE OF MOTION AND MOTION OF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE, FOR SUMMARY JUDGMENT ON ALL CLAIMS FOR RELIEF AGAINST DEFENDANTS; DECLARATION OF JOHN W. LUCAS; AND REQUEST FOR JUDICIAL NOTICE**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 1575<br>           255 E. Temple Street<br>           Los Angeles, CA 90012 |

**TO THE HONORABLE SANDRA KLEIN, UNITED STATES BANKRUPTCY JUDGE,**

**AND TO ALL COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on a date and time to be scheduled by the Honorable Sandra

Klein, United States Bankruptcy Judge, in Courtroom 1575 of the above-captioned Court, Plaintiff

Bradley D. Sharp, as  trustee ("**Plaintiff**" or the "**Trustee**") for the chapter 11 estate of Leslie Klein

(the "**Debtor**"), will and hereby does move (the "**Motion**") the Court for entry of summary judgment

in the Trustee's favor and against each of the above-captioned defendants, Leslie Klein or the

Debtor, The Second Amended Klein Living Trust (the "**Klein Living Trust**"), the Marital

Deduction Trust of Erika Klein (the "**MDT**"), The Survivor's Trust of Leslie Klein (the "**Survivor's**

**Trust**"), and Barbara Klein ("**Barbara**" and together with the other defendants, the "**Defendants**"

and each individually. a "**Defendant**")[1] on all claims for relief set forth in that certain *First Amended*

*Complaint for Quite Title and Avoidance of Unrecorded Interest in Real Property Located at 322*

*June St., Los Angeles, California* [Adv. Docket No. 6][2] (the "**Complaint**").[3]

The Trustee commenced this action seeking to (i) quiet title, pursuant to section 760.101, *et.*

*seq.* of the California Code of Civil Procedure, of that certain property located at 322 June St., Los

Angeles, California (the "**June St. Property**") in the name of the Debtor and, as such, as property of

the Debtor's estate, (ii) avoid any unrecorded or invalid transfers, pursuant to section 544(a)(3) of

the Bankruptcy Code, of the June St. Property, and (iii) recover the estate's interest in the June St.

Property, pursuant to section 550 of the Bankruptcy Code.  As discussed herein, the Trustee

contends that none of the material facts relevant to this Motion are in dispute and that he is entitled

to judgment, as a matter of law, on all of the claims for relief set forth in the Complaint.

This Motion is based upon this Notice, the Memorandum of Points and Authorities filed

attached hereto, the Declaration of John W. Lucas (the "**Lucas Declaration**") filed

contemporaneously herewith, the Request for Judicial Notice (the "**Request for Judicial Notice**")

filed contemporaneously herewith, the Statement of Uncontroverted Facts (the "**Statement**") filed

contemporaneously herewith, the pleadings and other papers filed in this adversary proceeding and

in the chapter 11 case to which it relates, and such further evidence and argument as may be

presented at or prior to the hearing on the Motion.

---

[1] References herein to the parties by their respective first names are made for ease of reference only.

[2] All references herein to "Bankr. Docket No. ___" are to the docket entries Case No. 23-10990-SK.  All references
herein to "Adv. Docket No. ___" are to the docket entries in Adv. Case No.: 2:24-ap-01140-SK.

[3] All capitalized terms not defined herein have the meanings ascribed to them in the Complaint.

1    **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 7056-

2    1(c), objections and responses, if any, to the Motion shall be filed with the Court and served on

3    Plaintiff's counsel at least twenty-one (21) days prior to the hearing date.

4

5    Dated:    September 20, 2024          PACHULSKI STANG ZIEHL & JONES LLP

6                                          By    */s/ John W. Lucas*
                                                  John W. Lucas
7

8                                          Attorneys for Plaintiff, Bradley D. Sharp,
                                           Chapter 11 Trustee
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. UNCONTROVERTED FACTS ......................................................................... 2

    A.     The Bankruptcy Case .......................................................................... 2

    B.     Schedules of Assets and Liabilities ..................................................... 3

    C.     Barbara Klein and June St. Property .................................................... 3

    D.     Debtor's Exemption Regarding June St. Property ................................ 4

    E.     The Property Deed ............................................................................... 4

    F.     The Klein Living Trust, Survivor's Trust, and MDT ........................... 4

    G.     The Complaint and Answer .................................................................. 7

III. STANDARD FOR SUMMARY JUDGMENT ................................................. 7

IV. PLAINTIFF IS ENTITLED TO SUMMARY
     JUDGMENT ON THE QUIET TITLE CLAIMS ......................................... 8

    A.     The Elements of a Quiet Title Claim Have Been Satisfied ................. 8

    B.     Bankruptcy Code Determines What Is Included in the Estate and  State Law
         Determines Whether a Certain Property Interest Is Owned by the Debtor ........... 9

    C.     The Klein Living Trust and the Underlying Trusts Are  "Self-Settled"
         and As Such the June St. Property Is Property of the Debtor's Estate ................ 10

V. The Debtor Admitted the June St. Property is Property of the Estate as Part of his
    Exemptions ............................................................................................ 13

VI. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A HYPOTHETICAL
     BONA FIDE PURCHASER UNDER SECTION 544(a)(3) CLAIMS .......................... 17

    A.     Section 544(a)(3) of the Bankruptcy Code Authorizes the  Plaintiff to
         Avoid Barbara Klein's Alleged Life Estate in the June St. Property .................. 18

    B.     Section 544(a) of the Bankruptcy Code Authorizes the  Plaintiff to
         Avoid the MDT's Interest in the June St. Property ............................. 20

    C.     Section 544(a)(3) of the Bankruptcy Code Entitles the  Plaintiff to
         Avoid Survivor's Trust's Alleged Interest the June St. Property ....................... 21

    D.     The Undisputed Facts Indicate That the Trustee Is  Entitled to Recover
         the June St. Property from the  Debtor Pursuant to Section 550 of the
         Bankruptcy Code ............................................................................... 22

VII. DEFENDANTS' DEFENSES ARE UNSUBSTANTIATED AND
     WITHOUT LEGAL MERIT ........................................................................ 23

VIII. CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................. 8

*Barboza v. New Form, Inc. (In re Barboza)*,
545 F. 3d 702 (9th Cir. 2008) ................................................................................. 8

*Bier v. Leisle*,
172 Cal. 432, 435 (1916) .................................................................................. 21, 22

*Butner v. United States*,
440 U.S. 48 (1974)..................................................................................................... 9

*California Steel & Tube v. Kaiser Steel Corp.*,
650 F.2d 1001 (9th Cir. 1981) ................................................................................ 8

*Cutter v. Seror (In re Cutter)*,
398 B.R. 6, 20 and 21 (B.A.P. 9th Cir. 2008)...................................................... 11

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) ................................................................................. 15

*Horton v. Kyburz*,
53 Cal. 2d 59, 66 (1959) ......................................................................................... 18

*In re Coupon Clearing Service, Inc.*,
113 F.3d 1091 (9th Cir. 1997) ................................................................................. 9

*In re Deuel*,
594 F.3d 1073 (9th Cir. 2010) ............................................................................... 23

*In re Farmers Markets, Inc.*,
792 F.2d 1400 (9th Cir. 1986) ................................................................................. 9

*In re Fisher*,
67 B.R. 666 (Bankr. D. Colo. 1986) ..................................................................... 19

*In re Heintz*,
198 B.R. 581 (B.A.P. 9th Cir. 1996) ..................................................................... 13

*In re MacDonald*,
164 B.R. 325 (Bankr. C.D. Cal. 1994)..................................................................... 9

*In re Neuton*,
922 F.2d 1379 (9th Cir. 1990) ............................................................................... 10

*In re Salkin*,
526 B.R. 31 (Bankr. C.D. Cal. 2015)..................................................................... 10

*In re Seaway Express Corp.*,
912 F.2d 1125 (9th Cir.1990) ................................................................................. 23

*In re Tleel*,
876 F.2d 769 (9th Cir. 1989) ........................................................................... 18, 23

*In re Washburn & Roberts, Inc.*,
795 F.2d 870 (9th Cir. 1986) ................................................................................. 18

*In re Witwer*,
148 B.R. 930 (Bankr. C.D. Cal. 1992).................................................................. 10

*Johnson v. Or. Dep't of Human Res.*,
  141 F.3d 1361(9th Cir. 1998) ................................................................................. 15

*Melendrez v. D & I Investment, Inc.*,
  127 Cal. App. 4th 1238 (Cal. App. 2005) ............................................................... 18

*Metcalf v. Drexel Lending Grp.*, No. 08-CV-00731
  W POR, 2008 U.S. Dist. LEXIS 87420 (S.D. Cal. Oct. 29, 2008) ........................... 9

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
  568 F. Supp. 2d 1152 (C.D. Cal. 2008) ................................................................. 15

*Moses v. Southern California Permanente Med. Group*,
  167 F.3d 470 (9th Cir. 1999) ................................................................................. 10

*Nelson v. California Trust Co.*,
  33 Cal. 2d 501 (Cal. 1949) ..................................................................................... 11

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................................... 15

*North Slope Borough v. Rogstad (In re Rogstad)*,
  126 F.3d 1224 (9th Cir. 1997) ................................................................................. 7

*Owen v. Owen*,
  500 U.S. 305 (1991) ............................................................................................... 13

*Patterson v. Shumate*,
  504 U.S. 753 (1992) ............................................................................................... 10

*Perlow v. Perlow*,
  128 B.R. 412 (E.D.N.C. 1991) .............................................................................. 19

*Rafftery v. Kirkpatrick*,
  29 Cal. App. 2d 503 (Cal. App. 1938) ................................................................... 18

*Summers v. Teichert & Son, Inc.*,
  127 F.3d 1150 (9th Cir.1997) ................................................................................... 8

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ................................................................................... 8

**STATUTES**

11 U.S.C. § 521(a)(1) ................................................................................................. 16

11 U.S.C. § 541 ...................................................................................................... 9, 10

11 U.S.C. § 544 ......................................................................................................... 18

11 U.S.C. § 550 ......................................................................................................... 22

**OTHER AUTHORITIES**

3 Harry D. Miller & Marvin B. Starr, *California Real Estate* §§ 8:62, 8:63, 8:65 (2d ed. 1989) ...... 18

Cal. Civ. Code § 1214 .......................................................................................... 18, 23

Cal. Civ. Code § 19 ................................................................................................... 18

Cal. Prob. Code § 15300 ........................................................................................... 10

Cal. Prob. Code § 15304(a) ...................................................................................... 11

**RULES**

Fed. R. Civ. P. 56 ....................................................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The uncontroverted facts make it patently clear that the Debtor owns and controls the property located at 322 June St., Los Angeles, California (the "**June St. Property**") for his benefit and has attempted to exclude this valuable asset from the reach of his creditors.  Because the Debtor is a settlor, a trustee with unfettered control of the trust assets, and a beneficiary under the trust that holds title to the June St. Property, any spendthrift clause in the trust document that would otherwise prevent creditors from reaching the June St. Property are unenforceable. The Debtor, as a settlor, trustee, and beneficiary cannot place the June St. Property in a trust, control the June St. Property without any restrictions, and also enjoy the benefits of the June St. Property – all while thwarting creditors.  The California Supreme Court has ruled without question that establishment of such trusts cannot be enforced against creditors.

The Debtor has conveniently omitted in the Answer that he sought and obtained a $189,050 exemption with respect to the June St. Property. The Debtor sought to exempt a greater amount; however, the exemption was opposed and the Court limited the exemption to the maximum amount permitted under applicable law. Undercutting the entirety of the Debtor's defense in this adversary proceeding, is the fact that *the U.S. Supreme Court has held that a debtor cannot claim an exemption unless the subject property is in fact property of the estate.* The Debtor is bound by his own conduct and is judicially estopped from taking another position, especially one that is not based on any evidence.

The Defendants contend, without any valid and enforceable written proof, that the June St. Property is owned by a trust that was established by the Debtor and his late spouse, and that Barbara, the Debtor's current spouse, holds a life interest in the June St. Property.  However, no valid and enforceable documentation exists that reflects a trust (other than the Debtor's self-settled trust) owns the June St. Property except a premarital agreement between the Debtor and Barbara that was never recorded (as Barbara has admitted) and as such may be avoided by the Trustee pursuant to section 544(a)(3) of the Bankruptcy Code, along with any other unrecorded interest in the June St. Property.

1    By way of the Trustee's Complaint, the Trustee seeks to (i) have the Court quiet title,

2 pursuant to section 760.101 *et. seq.* of the California Civil Procedure, to the June St. Property in the

3 name of the Debtor's estate, (ii) avoid any unrecorded or invalid transfers, pursuant to section

4 544(a)(3) of the Bankruptcy Code, of the June St. Property, and (iii) recover the estate's interest in

5 the June St. Property, pursuant to section 550 of the Bankruptcy Code.

6    As set forth herein, this matter is straightforward. Plaintiff's position is strongly supported by

7 the evidence (including admissions by the Defendants) and ample case law from the Ninth Circuit

8 and the California Supreme Court. Plaintiff's relief seeking to quiet title of the June St. Property in

9 the name of the Debtor's estate should be granted. For the reasons set forth herein, the Plaintiff's

10 motion should be granted based on the uncontroverted facts and controlling law.

11                                     **II.**

12                          **UNCONTROVERTED FACTS**

13    The following uncontroverted facts are supported by the Lucas Declaration and the Statement

14 of Uncontroverted Facts:

15 **A.    The Bankruptcy Case**

16    On February 22, 2023 (the "Petition Date") [Bankr. Docket No. 1], the Debtor commenced a

17 voluntary chapter 11 case in the United States Bankruptcy Court for the Central District of

18 California (Los Angeles Division) Case No. 23-10990-SK (the "Bankruptcy Case").[1]

19    On May 23, 2023, the Office of the United States Trustee (the "OUST") filed a *Notice of*

20 *Appointment of Chapter 11 Trustee* [Docket No. 151].[2] On May 24, 2023, the OUST filed an

21 *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154],[3] which

22 was approved by order entered the same day [Docket No. 155].[4] On that same day, the Trustee

23 accepted his appointment [Docket No. 156],[5] as the chapter 11 trustee of the Debtor's bankruptcy

24 estate.

25

26

[1] Request for Judicial Notice, **Exhibit A**.
27 [2] Request for Judicial Notice, **Exhibit B**.
[3] Request for Judicial Notice, **Exhibit C**.
28 [4] Request for Judicial Notice, **Exhibit D**.
[5] Request for Judicial Notice, **Exhibit E**.

4895-4962-6577.9 78512.001                          2

**B.      Schedules of Assets and Liabilities**

On March 8, 2023, the Debtor filed his schedules of assets and liabilities ("**Schedules**") and statement of financial affairs (the "**SOFAs**") [Bankr. Docket No. 34].[6]

According to the Debtor, the Schedules reflect that the June St. Property (*i.e.*, the property located at 322 N. June St., Los Angeles, California) is 50% owned by the Debtor's bankruptcy estate, and 50% owned by the MDT of the Debtor's deceased spouse, Erika Klein.[7]

According to the SOFAs, to the question "[w]ithin 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?" the Debtor admitted that *he had not*.[8]

The SOFAs also reflect that the June St. Property is subject to a life estate interest asserted by Barbara Klein ("**Barbara**"), the Debtor's current spouse.[9]

**C.      Barbara Klein and June St. Property**

The Debtor and Barbara entered into a *Premarital Agreement*, dated November 2013 (the "**Premarital Agreement**").[10] The parties to the premarital agreement are the Debtor, Leslie Klein in his individual capacity, and Barbara.[11]

The Debtor and Barbara entered into a certain *First Amendment to Premarital Agreement*, dated November 25, 2015 (the "**Amendment to the Premarital Agreement**"), wherein the Debtor agreed that Barbara "may also live in the house AT [sic] 322 N. June Street where the Parties live during her life time."[12] Like the Premarital Agreement, the parties to the Amendment to the Premarital Agreement are the Debtor, Leslie Klein in his individual capacity, and Barbara.

Barbara admits that the Amendment to the Premarital Agreement was never recorded with the recorder's office in the County of Los Angeles (or any other county) prior to or after the Petition Date.[13]

---

[6] Request for Judicial Notice, **Exhibit F**.
[7] Request for Judicial Notice, **Exhibit F**, Sch. A/B, Pt. 1.1.
[8] Request for Judicial Notice, **Exhibit F**, SOFA Pt. 7.19.
[9] Request for Judicial Notice, **Exhibit F**, Sch. A/B, Pt. 1.1.
[10] *Declaration of John W. Lucas* (the "**Lucas Declaration**,") **Exhibit 1**.
[11] Lucas Declaration, **Exhibit 1**.
[12] Lucas Declaration, **Exhibit 2**.
[13] Lucas Declaration, **Exhibit 3**, Nos. 2 and 3.

**D.    Debtor's Exemption Regarding June St. Property**

As set forth in the SOFAs, the Debtor sought and obtained an exemption with respect to the June St. Property.[14] The SOFAs reflect that the Debtor sought an exemption in the amount of $678,397, pursuant to California Code of Civil Procedure § 704.703. *Id.* However, after litigation the Court limited the Debtor's exemption in the June St. Property to $189,050. *See* [Bankr. Docket No. 141].[15]

**E.    The Property Deed**

The real property deed (the "**June St. Deed**") for the June St. Property reflects that it is owned by "Leslie Klein and Erika Noemi Klein, as Trustee under the Klein Living Trust of 1975." (the "**Klein Living Trust of 1975**").[16]

**F.    The Klein Living Trust, Survivor's Trust, and MDT**

**(i)    The Klein Living Trust**

On April 8, 1990, the Debtor and his former spouse, Erika Klein ("Erika"), created the Klein Living Trust.[17]

Under the Klein Living Trust, the Debtor and Erika were co-settlors.[18]

Under the Klein Living Trust, the Debtor and Erika were the co-trustees.[19]

During the joint lives of the Debtor and Erika, they were the sole income and principal beneficiaries under the Klein Living Trust.[20]

On December 12, 2012, Erika died.[21]

Under the Klein Living Trust, upon Erika's death, the Debtor became the surviving settlor and assumed the role as the "First Trustee."[22]

Under the Klein Living Trust, the First Trustee serves as trustee for "all trusts under this instrument."[23]

---

[14] Request for Judicial Notice, **Exhibit F**, Sch. C, Pt. 1.
[15] Request for Judicial Notice, **Exhibit G**.
[16] Request for Judicial Notice, **Exhibit H**.
[17] Request for Judicial Notice, **Exhibit I**.
[18] Request for Judicial Notice, **Exhibit I**, Art. 1.
[19] Request for Judicial Notice, **Exhibit I**, Art. 1.
[20] Request for Judicial Notice, **Exhibit I**, Art. 2.
[21] Request for Judicial Notice, **Exhibit I**, p. 23.
[22] Request for Judicial Notice, **Exhibit I**, Art. 7.
[23] Request for Judicial Notice, **Exhibit I**, Art. 7.

Under the Klein Living Trust, both the Debtor and Erika were sole income and principal beneficiaries.[24]

Each of the Defendants (other than Barbara who was not asked the applicable question) admit that the ownership of the June St. Property was continuously held by the Klein Living Trust of 1975 and then by the Klein Living Trust when such trust was amended and superseded the Klein Living Trust of 1975.[25]

Each of the Defendants (other than Barbara who was not asked the applicable question) represent that the documents memorializing the transfer of the June St. Property from the Klein Living Trust to any other party is reflected on ledgers annexed to the responses to interrogatories, which were not recorded with the recorder's office of Los Angeles County, or any other county.[26]

The Defendants admit that the June St. Property is owned by the Klein Living Trust since 1990 and prior versions of such trust (*i.e.*, the Klein Living Trust of 1975) since 1977.[27]

**(ii)    The Marital Deduction Trust or MDT**

Under the Klein Living Trust, the Debtor serves as the First Trustee for the MDT.[28]

Under the Klein Living Trust, and all trusts under such instrument, including the MDT, "self-dealing" is permitted.[29]

Under the Klein Living Trust, the MDT provides that the Debtor is both the income beneficiary and principal beneficiary.[30]

Under the Klein Living Trust, the MDT provides that the First Trustee may use both the income from the MDT and the principal of the MDT for the benefit of the Debtor.[31]

Under the Klein Living Trust, the MDT provides that the First Trustee (i.e., the Debtor) "shall pay to or for the income beneficiary all net income of the trust in convenient installments at least annually."[32]

---

[24] Request for Judicial Notice, **Exhibit I**, Art. 2.
[25] Lucas Declaration, **Exhibit 4**, No. 3.
[26] Lucas Declaration, **Exhibit 5**, No. 1.
[27] Lucas Declaration, **Exhibit 5**, No. 1.
[28] Request for Judicial Notice, **Exhibit I**, Art. 7.
[29] Request for Judicial Notice, **Exhibit I**, Art. 7, p. 15.
[30] Request for Judicial Notice, **Exhibit I**, Art. 5, p. 10.
[31] Request for Judicial Notice, **Exhibit I**, Art. 5, p. 11.
[32] Request for Judicial Notice, **Exhibit I**, Art. 5, p. 11.

1    Under the Klein Living Trust, the MDT provides that the First Trustee (i.e., the Debtor)

2  "shall pay to or for the principal beneficiary as much of the principal as is necessary for the principal

3  beneficiary's health, education, or support to maintain the principal beneficiary's accustomed

4  manner of living."[33]

5        **(iii)    <u>The Survivor's Trust</u>**

6        Under the Klein Living Trust, the Debtor serves as the First Trustee for the Survivor's

7  Trust.[34]

8        Under the Klein Living Trust, and all trusts under such instrument, including the Survivor's

9  Trust, "self-dealing" is permitted.[35]

10        Under the Klein Living Trust, the Survivor's Trust provides that the Debtor is both the

11  income beneficiary and principal beneficiary.[36]

12        Under the Klein Living Trust, the Survivor's Trust provides that the First Trustee may use

13  both the income from the Survivor's Trust and the principal of the Survivor's Trust for the benefit of

14  the Debtor.[37]

15        Under the Klein Living Trust, the Survivor's Trust provides that the First Trustee "shall pay

16  to or for the income beneficiary as much of the net income as the trustee considers necessary for the

17  income beneficiary's health, education, support, comfort, welfare, or happiness to maintain at a

18  minimum the income beneficiary's accustomed manner of living."[38]

19        Under the Klein Living Trust, the Survivor's Trust provides that the First Trustee "shall pay

20  to or for the principal beneficiary as much of the principal as is necessary for the principal

21  beneficiary's health, education, support, comfort, welfare, or happiness to maintain at a minimum

22  the principal beneficiary's accustomed manner of living."[39]

23

24

25

26  [33] Request for Judicial Notice, **<u>Exhibit I</u>**, Art. 5, p. 11.
    [34] Request for Judicial Notice, **<u>Exhibit I</u>**, Art. 7, p. 14.
    [35] Request for Judicial Notice, **<u>Exhibit I</u>**, Art. 7, p. 15.
27  [36] Request for Judicial Notice, **<u>Exhibit I</u>**, Art. 4, p. 8-9.
    [37] Request for Judicial Notice, **<u>Exhibit I</u>**, Art. 4, p. 9.
28  [38] Request for Judicial Notice, **<u>Exhibit I</u>**, Art. 4, p. 9.
    [39] Request for Judicial Notice, **<u>Exhibit I</u>**, Art. 4, p. 9.

1       (iv)     **The Management Powers of the Trustee(s) Under the Klein Living**

2       Under the Klein Living Trust, the MDT, Survivor's Trust, and any other trust created under

3  the Klein Living Trust, the trustee thereunder has the power to:  (a) retain or abandon any property

4  held by the trust (including the June St. Property) and (b) manage, control, grant options on, sell (for

5  cash or on deferred payments with or without security), convey, exchange, partition, divide,

6  improve, and repair trust property (including the June St. Property).[40]

7       **(v)**     **The Spendthrift Clause**

8       The Klein Living Trust contains a "spendthrift" clause (the "**Spendthrift Clause**") that

9  purports to limit or exclude the trust "res" from the reach of creditors to pay their claims.[41]

10  **G.**     **The Complaint and Answer**

11       On May 29, 2024, the Plaintiff filed the Complaint [Adv. Docket No. 6] and commenced this

12  adversary proceeding.[42]

13       On July 12, 2024, each of the Defendants filed a consolidated answer (the "**Answer**") to the

14  Complaint [Adv. Docket No. 21].[43]  In the Answer, the Defendants represent that the Survivor's

15  Trust transferred its 50% interest in the June St. Property to the MDT.[44]

16                     **III.**

17        **STANDARD FOR SUMMARY JUDGMENT**

18       Rule 56 of the Federal Rules of Civil Procedure applies in this adversary proceeding.  *See*

19  Fed. R. Bankr. P. 7056.  Under Rule 56, "[t]he court shall grant summary judgment if the movant

20  shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

21  as a matter of law."  Fed. R. Civ. P. 56.  Summary judgment is available under Bankruptcy Rule

22  7056 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

23  with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

24  moving party is entitled to a judgment as a matter of law."  *North Slope Borough v. Rogstad (In re*

25  *Rogstad)*, 126 F.3d 1224, 1227 (9th Cir. 1997).

26  

27  [40] Request for Judicial Notice, **Exhibit I**, Art. 8, p. 16.
[41] Request for Judicial Notice, **Exhibit I**, Art. 10, p. 22.
[42] Request for Judicial Notice, **Exhibit J**.

28  [43] Request for Judicial Notice, **Exhibit K**.
[44] Request for Judicial Notice, **Exhibit K**, Para. 11.

1  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary

2  judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

3  1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Rather, following the

4  filing of "a properly submitted summary judgment motion, the burden shifts to the opposing party to

5  set forth specific facts showing that there is a genuine issue for trial." *Barboza v. New Form, Inc. (In*

6  *re Barboza)*, 545 F. 3d 702, 707 (9th Cir. 2008).  The opposing party cannot simply assert the "mere

7  existence of some alleged factual dispute between the parties" (*Liberty Lobby*, 477 U.S. at 247-48),

8  nor can it "rest upon the mere allegations or denials" in the pleadings.  *Id.*[45]  Thus, "[f]or an issue to

9  be 'genuine,' there must be evidence such that a reasonable jury could reach a verdict in favor of the

10  nonmoving party." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997) (citing

11  *Liberty Lobby*, 477 U.S. at 250)).

12  Substantive law determines which facts are material for purposes of summary judgment.

13  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Summary judgment will not lie if the

14  dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could

15  return a verdict for the nonmoving party." *Id*.  The court must view all the evidence in the light most

16  favorable to the nonmoving party.  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).  The court may

17  not evaluate the credibility of a witness or weigh the evidence.  *California Steel & Tube v. Kaiser*

18  *Steel Corp.*, 650 F.2d 1001, 1003 (9th Cir. 1981).

19  **IV.**

20  **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON THE QUIET TITLE CLAIMS**

21  **A.**     **The Elements of a Quiet Title Claim Have Been Satisfied**

22  To state a claim for quiet title, a complaint must include (1) the subject property's

23  description, including both its legal description and its street address or common designation; (2)

24

25  [45] In *Liberty Lobby*, a Georgia politician sued Liberty Lobby, Inc. for defamation stemming from an article in their
magazine *The Spotlight* that falsely associated him with the Communist Party.  *Id*.  The Court vacated the partial

26  summary judgment in favor of the petitioners and remanded the case due to the incorrect application of the standard of
review: the plaintiff was compelled to provide specific facts showing actual malice in order to survive the defendant's

27  motion for summary judgment.  *Id*.  *Accord, First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 290 (1968) (holding that
in response to the defendant's amply supported motion for summary judgment, plaintiff could not rely solely on his

28  allegations of a conspiracy to get to a jury without "any significant probative evidence tending to support the
complaint.").

plaintiff's alleged title to the property; (3) the adverse claims against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title against the adverse claims.  *Metcalf v. Drexel Lending Grp.*, No. 08-CV-00731 W POR, 2008 U.S. Dist. LEXIS 87420, *14 (S.D. Cal. Oct. 29, 2008).

The June St. Property is specifically described in the Complaint.[46]   The Complaint describes who the Trustee believes currently owns the June St. Property (*i.e.*, the Debtor).[47]   The Complaint describes the adverse claims for which a determination is sought (*i.e.*, the MDT).[48]   The Complaint seeks a determination as of the Petition Date that the Debtor's estate owns the June St. Property.[49] The Complaint includes a prayer for the determination of title against the adverse claims (*i.e.*, neither the MDT or any other party, other than the Debtor's estate, holds a valid interest in the June St. Property).[50]

As reflected in the Complaint and herein, the Plaintiff's claim for quiet title is proper and ripe for determination by the Court.

**B.    The Bankruptcy Code Determines What Is Included in the Estate and State Law Determines Whether a Certain Property Interest Is Owned by the Debtor**

Federal bankruptcy law governs the extent to which a debtor's property is included in the bankruptcy estate.  *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986); *In re MacDonald*, 164 B.R. 325, 328 (Bankr. C.D. Cal. 1994).  Section 541(a) of the Bankruptcy Code expressly provides that property of the estate includes, *inter alia*, "(1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a). However, state law determines whether a particular right, power or interest is "property" and the nature and extent of the debtor's interest therein.  *Butner v. United States*, 440 U.S. 48, 54 (1974); *In re Coupon Clearing Service, Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997).

---

[46] Request for Judicial Notice, **Exhibit J**, ¶¶ 3, 15, and Exhibit C thereto
[47] Id. at ¶ 15.
[48] Id. at ¶¶ 3 and 17-19.
[49] Id. at ¶ 4.
[50] Id. at p. 5, ¶¶ 1-3.

**C.    The Klein Living Trust and the Underlying Trusts Are
        "Self-Settled" and As Such the June St. Property Is Property of the Debtor's Estate**

The June St. Property is owned by the Debtor and is property of the Debtor's bankruptcy estate. Any of the alleged trusts that are asserted to own the June St. Property (*e.g.*, the Klein Living Trust, the Survivor's Trust, or the MDT) are each "self-settled" (*i.e.*, the Debtor is the beneficiary of such trusts, the trustee for each trust, and as trustee has unfettered control and discretion over the assets of each trust). A "self-settled" trust is <u>statutorily</u> precluded from shielding the June St. Property (or any other assets) from creditors with claims against the Debtor by virtue of the Spendthrift Clause.

Upon the filing of a petition under the Bankruptcy Code, an estate is created comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a) (1988); *Moses v. Southern California Permanente Med. Group*, 167 F.3d 470, 473 (9th Cir. 1999).  Section 541 of the Bankruptcy Code, however, excludes from the estate property that contains a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law."  11 U.S.C. § 541(c)(2); *Moses*, 167 F.3d at 473. Under section 541(c)(2) of the Bankruptcy Code, an anti-alienation provision in a valid spendthrift trust created under state law is an enforceable "restriction on the transfer of a beneficial interest of the debtor" and thus serves to exclude the trust corpus from the bankruptcy estate.  *Patterson v. Shumate*, 504 U.S. 753, 757-58 (1992).

California law recognizes the validity of spendthrift trusts.  *In re Neuton*, 922 F.2d 1379 (9th Cir. 1990) (citing Cal. Prob. Code §§ 15300 *et seq.*).  However, the critical inquiry in determining the validity and enforceability of a spendthrift clause under California law is whether the trust's beneficiaries exercise excessive control over the trust.  *See, e.g., In re Salkin*, 526 B.R. 31 (Bankr. C.D. Cal. 2015); *In re Witwer*, 148 B.R. 930, 937 (Bankr. C.D. Cal. 1992).  As will be shown here, California law does not allow a participant with excessive control over his or her trust to shield that trust with an anti-alienation provision lacking true substance.

Under California law, a settlor of a trust containing a spendthrift clause cannot also act as beneficiary of that trust and use such clause to prevent creditors from reaching the trust's corpus to

pay their claims. Cal. Prob. Code § 15304(a). A trust where the settlor acts as the beneficiary is commonly referred to as a "self-settled" trust. In this context, California law **voids** spendthrift clauses in self-settled trusts to prevent individuals from placing their property beyond the reach of their creditors while at the same time still reaping the bounties of such property as a beneficiary of the trust. *Nelson v. California Trust Co.*, 33 Cal. 2d 501, 202 P.2d 1021, 1021 (Cal. 1949) (holding that where a debtor was the sole beneficiary under a trust, all the property in the trust is subject to the claims of the debtor's creditors).

In *Salkin*, a husband and wife were co-settlers of their living trust and also served as co-trustees during their lifetime. *Salkin*, 526 B.R. at 33. The husband and wife were income and principal beneficiaries under the trust. *Id.* After the husband's death, the wife continued to serve as trustee under the trust and remained as an income and principal beneficiary under the trust. *Id.* The trust included a "spendthrift" provision that precluded any beneficiary from alienating, encumbering or hypothecating his or her interest in Trust principal or income and precluding such interest from becoming subject to claims of such beneficiary's creditors. *Id.* The court held that the income and principal in the trust were property of the debtor's (*i.e.*, the wife's) estate because section 15304(a) of the California Probate Code renders the spendthrift provision of the trust unenforceable against a transferee (in this case the chapter 7 trustee) or a creditor of the beneficiary. *Id.* at 33 and 34. Further, the court held that all of the assets of the trust were property of the estate because the debtor as the trustee of the trust was permitted to control the trust's assets. *Id.* at 34.

Similarly, in *Cutter v. Seror* (*In re Cutter*), 398 B.R. 6, 20 and 21 (B.A.P. 9th Cir. 2008), the court held that because the debtor had access to potentially all of the trust's assets and income to maintain his standard of living and possessed the power to "invade" the corpus of the trust, and the right, at his sole discretion, to make distributions to provide for his health, education, or support and maintenance in his customary standard of living that the spendthrift clause in the trust was not enforceable against his creditors.

Here, the facts are substantially similar, if not identical, to the facts in *Salkin* and *Cutter*. The Debtor and Erika were co-settlors of the Klein Living Trust.[51] Under the Klein Living Trust, the

---

[51] Request for Judicial Notice, **Exhibit I**, Art. 1.

Debtor and Erika served as co-trustees and during their lives were both income and principal beneficiaries.[52]  After Erika's death, the Debtor continued in his capacity as trustee "[f]or all trusts under this instrument . . ."[53]  Other than the creditors' trust (which does not claim any interest in the June St. Property), the Debtor is the trustee, income beneficiary, and principal beneficiary under the Klein Living Trust and all trusts created thereunder.[54]

The Debtor as trustee under the Klein Living Trust, Survivor's Trust, and the MDT, is authorized to "self-deal" permitting him as the trustee under each of the applicable trusts to loan money to the trust and encumber trust property for the purpose of securing such loans, purchase and exchange assets, and abandon and sell assets of the applicable trusts.[55]  Further, the Klein Living Trust, Survivor's Trust, and the MDT each provided the trustee of those trusts (*i.e.*, the Debtor) unfettered discretion to distribute assets of the applicable trust to the income and principal beneficiary, who is also the Debtor.[56]

Accordingly, based on the foregoing controlling law and undisputed facts, the Court should enter summary judgment in the Trustee's favor with respect to the First Claim for Relief and quieting title of the June St. Property in the name of the Debtor's bankruptcy estate. First, the June St. Deed reflect that the June St. Property is owned by the Klein Living Trust.[57] Second, Defendants admit that the June St. Property is owned by the Klein Living Trust since 1990 and prior versions of such trust (*i.e.*, the Klein Living Trust of 1975) since 1977.[58] Third, there are no other valid and enforceable documents reflecting that the June St. Property is owned by any other party than the Klein Living Trust. Fourth, the Debtor is the settlor, trustee, and income and principal beneficiary under the Klein Living Trust who has unfettered discretion to dispose of the assets held by the Klein Living Trust thereby precluding the enforcement of the Spendthrift Clause in the Klein Living Trust.[59] As a result, the June St. Property is property of the Debtor's estate.

---

[52] Request for Judicial Notice, **Exhibit I**, Art. 1 and Art. 2.
[53] Request for Judicial Notice, **Exhibit I**, Art. 7.
[54] Request for Judicial Notice, **Exhibit I**, Art. 2, Art. 4, and Art. 5.
[55] Request for Judicial Notice, **Exhibit I**, Art. 7, p. 15.
[56] Request for Judicial Notice, **Exhibit I**, Art. 8, p. 16.
[57] Request for Judicial Notice, **Exhibit H**.
[58] Lucas Declaration, **Exhibit 5**, No. 1.
[59] Request for Judicial Notice, **Exhibit I**, Art. 1., Art. 2, and Art. 7.

1   Even if it is assumed that it is owned by MDT or the Survivor's Trust (and the Trustee is not

2   making such concession), each such trust is "self-settled" because the Debtor was the settlor of Klein

3   Living Trust[60] and is the trustee[61] and income and principal beneficiary under such trusts,[62] with

4   unfettered discretion of control of the assets (including the June St. Property) for the Debtor's

5   benefit.[63] Like the applicability of the Spendthrift Clause to the Klein Living Trust, such clause is

6   not enforceable against the Debtor's creditors because even if the June St. Property is owned by

7   either the MDT or Survivor's Trust such trusts are self-settled and their assets (i.e., the June St.

8   Property) are property of the Debtor's estate.

9   **V.**

10   **The Debtor Admitted the June St. Property is Property of the Estate as Part of his Exemptions**

11   In further support of the Plaintiff's quiet title claim, the Debtor's actions, admissions, and the

12   relief he obtained from the Court with respect to his homestead exemption regarding the June St.

13   Property further demonstrate that the June St. Property is property of the Debtor's estate.

14   The Supreme Court of the United States held that "[n]o property can be exempted (and

15   thereby immunized), however, **unless it first falls within the bankruptcy estate**." *Owen v. Owen*,

16   500 U.S. 305, 308 (1991) (superseded by statute on unrelated finding) (emphasis added); *In re*

17   *Heintz*, 198 B.R. 581, 585 (B.A.P. 9th Cir. 1996) (holding that an exemption removes property from

18   the debtor's estate).

19   In the Answer, Defendants take the untenable position that the entire ownership interest in

20   the June St. Property is held by the MDT.[64] By the Answer, Defendants assert that:

21   
22   Leslie Klein, as trustee of the MDT, acquired from Leslie Klein, as
        trustee of the Survivor's Trust, all of the Survivor's Trust's 50%
        interest in the June Property as a bona fide purchaser for value. As a
23   result, Leslie Klein, as trustee of the MDT, owns all right, title and
        interest in the June Street Property and neither the Survivor's Trust nor
24   the bankruptcy estate holds any interest in the June Street property,
        except for Leslie Klein's life estate.
25

26   _____

27   [60] Request for Judicial Notice, **Exhibit I**, Art. 1.
     [61] Request for Judicial Notice, **Exhibit I**, Art. 7.
     [62] Request for Judicial Notice, **Exhibit I**, Art. 5, p. 10 and Art. 4, p. 8-9.
28   [63] Request for Judicial Notice, **Exhibit I**, Art. 4, p. 9, Art. 5, p. 11, and Art. 8, p. 16.
     [64] Request for Judicial Notice, **Exhibit K**, Para. 11.

1   Without any support or written verification, Defendants assert that the June St. Property is

2   wholly owned by the MDT and not part of the Debtor's estate. While the Debtor's and the other

3   Defendants' assertions are not credible, they are impossible. The Debtor already sought and obtained

4   an exemption (up to the maximum amount permitted by law) with respect to the entirety of the June

5   St. Property.[65] As recognized by the U.S. Supreme Court in *Owen*, this Court could not have

6   approved the Debtor's exemption of the June St. Property (in whole or part) unless the June St.

7   Property was in fact property of the Debtor's estate. *Owen*, 500 U.S. at 308.

8   The Defendants contend that recordation of the Klein Living Trust in April 2013[66] (after

9   Erika's death in December 2012) provides the necessary recordation to preserve the asserted senior

10   rights the MDT with respect to the June St. Property. However, in the SOFAs, the Debtor

11   represented to the Court, under penalty of perjury, that in the ten years prior to the Petition Date (ten

12   years prior to the Petition Date is February 22, 2013, i.e., before the recordation of the Klein Living

13   Trust) that he had not transferred any property to a "self-settled" trust or any other similar party.[67]

14   In short, the Debtor is intentionally attempting to deceive the Court and the other parties in

15   this case about his representations regarding the June St. Property and he cannot keep straight his

16   "evolving" story in his futile attempt to hold onto the June St. Property. The Debtor's and the other

17   Defendants' conduct here should not and cannot be rewarded. The Debtor has conveniently omitted

18   that he sought and obtained an exemption with respect to the June St. Property. The Debtor also fails

19   to understand the conclusions and findings of obtaining an exemption with respect to any property

20   (*i.e.*, it must first be property of the estate) and the representations he made with respect to all his

21   assets.

22   The Defendants have not produced any documents that could be construed or interpreted as

23   transferring the June St. Property from the Klein Living Trust to any other trust or party. Under

24   California law, Civil Code section 1092 provides that a grant of an estate in real property may be

25   made by providing in substance: "I, A B, grant to C D all that real property . . . ." The operative and

26   essential element of such a deed has long been held to be the word "grant." *Klamath Land & Cattle*

---

[65] Request for Judicial Notice, **Exhibit G**.
[66] Request for Judicial Notice, **Exhibit I**.
[67] Request for Judicial Notice, **Exhibit F**, SOFA Pt. 7.19.

*Co. v. Roemer*, 12 Cal. App. 3d 613, 618 (Cal. App. 1970) (holding that in California the word "grant" has been used to the transfer of all estates in real property, and not solely estates in fee simple, since some time prior to 1845).

No Defendant produced any writing that reflects there was a grant of the fee simple interest in the June St. Property to any other Defendant, or any other party for that matter. Thus, the Debtor and the other Defendants' attempted manipulation of the facts falls flat because they cannot demonstrate, as they must, that there was a transfer of the June St. Property in whole or in part.

As a result, and on account of the Debtor's request for and the relief obtain for his homestead exemption, the Debtor should be judicially estopped from arguing that the June St. Property is not property of the Debtor's estate. Judicial estoppel is an equitable doctrine, invoked by a court at its discretion, which precludes a party from gaining an advantage by asserting one position and subsequently taking a clearly inconsistent position. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The doctrine applies to prevent a party from asserting inconsistent positions in different cases, as well as in a single litigation. *Id.* at 783. The Supreme Court has identified three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel: (1) whether a party's position is "clearly inconsistent" with its earlier position; (2) whether the first court accepted the party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). "In addition to these factors, the Ninth Circuit examines whether the party to be estopped acted inadvertently or with any degree of intent." *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1164 (C.D. Cal. 2008) (internal quotation marks omitted). "If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply." *Johnson v. Or. Dep't of Human Res.*, 141 F.3d 1361, 1369 (9th Cir. 1998).

The application of judicial estoppel in the bankruptcy setting is important "to protect the integrity of the bankruptcy process," for "[t]he debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets." *Hamilton*, 270 F.3d at 785. Further, because the Bankruptcy Code subjects debtors to a continuing

duty to disclose all pending and potential claims, *see* 11 U.S.C. § 521(a)(1), judicial estoppel bars a plaintiff from pursuing a claim that the plaintiff failed to disclose in his bankruptcy proceeding even when the claim arose after the bankruptcy petition was initially filed, see Hamilton, 270 F.3d at 785. Indeed, "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Id.* at 784; *see also Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 272-73 (9th Cir. 2013) (applying "a presumption of deliberate manipulation" where "a plaintiff-debtor has not reopened bankruptcy proceedings" and "filed amended bankruptcy schedules that properly listed this claim as an asset").

All factors have been satisfied here as outlined in by the Supreme Court in *New Hampshire v. Maine*. First, the Debtor sought an exemption with respect to the June St. Property and obtained an exemption in the amount of $189,050, which under the circumstances is the maximum amount permitted under California law and the Bankruptcy Code. The Debtor could not have obtained such exemption under the June St. Property is property of the estate. Now, as set forth in the Answer, Defendants contend, without any evidence and in response to the Trustee's action to obtain control of the June St. Property and sell it, that the MDT owns 100% of the June St. Property.[68]

Second, the Trustee believes that it is more than fair to say that this Court accepted the Debtor's position in this case that the June St. Property is property of the Debtor's estate given that the Debtor obtained relief from the Court in the form of an exemption in the amount of $189,050. Now that the Trustee is seeking to obtain control of the June St. Property the Debtor is continuing to change his story regarding the ownership of the June St. Property.

Third, the Debtor (who is really the true defendant in this adversary proceeding) would gain an unfair advantage if he is permitted to take inconsistent positions that are contrary to positions taken under penalty of perjury. Again, the Debtor has offered no evidence to support his unsubstantiated assertions that the MDT is the sole owner of the June St. Property even when such

---

[68] It should be noted that the Debtor made a similar argument regarding the MDT's ownership of Bay Area Development Company in connection with the Trustee's actions to sell the Debtor's equity interest in such company (*i.e.*, the MDT owns Bay Area Development not the Debtor's bankruptcy estate. *See, e.g.*, [Bankr. Docket Nos. 749 and 750] and the Trustee's response thereto. [Bankr. Docket No. 754].

property had to be property of the estate for him to obtain the relief from this Court regarding the homestead exemption. To let such a specious argument prevail now would prevent the Trustee from obtaining control of the June St. Property so that he can the property, subject to Court approval, and retain the proceeds in excess of the $189,050 exemption that the Debtor fought to preserve.

Accordingly, based on the foregoing controlling law and undisputed facts, the Court should enter summary judgment in the Trustee's favor with respect to the First Claim for Relief and quieting title of the June St. Property in the name of the Debtor's bankruptcy estate because the Debtor sought and obtained an homestead exemption, which could have only been granted if the June St. Property was property of the estate. Moreover, there are no documents evidencing a transfer of ownership of the June St. Property in accordance with California law.

## VI.

### PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A HYPOTHETICAL BONA FIDE PURCHASER ON HIS SECTION 544(a)(3) CLAIMS

The Defendants contend that Barbara holds an interest in the June St. Property that is not subject to avoidance.  To the extent Barbara holds any interest in the June St. Property, such interest is neither memorialized in writing nor recorded in the local county recorder's office as required by California law.  As a result, the Trustee is a *bone fide* purchaser for value holding a senior and perfected interest in the June St. Property and may avoid whatever junior and unrecorded interest that Barbara might hold.

The Defendants have failed produce any written and recorded documentation, as required by California law, that shows the MDT or any other trust owns an interest in the June St. Property.  As above, the Trustee, as a *bone fide* purchaser for value, holds a senior and perfected interest in the June St. Property and may avoid whatever junior and unrecorded interest that the MDT or any other trust might hold in the June St. Property.

A debtor or a bankruptcy trustee on behalf of a debtor's estate holds "strong arm powers" provided by section 544(a)(3) of the Bankruptcy Code empowering the trustee to avoid transfers of or against real property that would be junior under state law to a *bona fide* purchaser for value. Section 544(a)(3) provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—A bona fide purchaser of all real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that attains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

A bankruptcy court looks to state law to determine the rights of a *bone fide* purchaser for value. *In re Washburn & Roberts, Inc.*, 795 F.2d 870, 872 (9th Cir. 1986). Under California law,

> Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

Cal. Civ. Code § 1214.

The terms "valuable consideration" or "for value" do not necessarily mean "fair market value" but value that is not nominal in nature. *Horton v. Kyburz*, 53 Cal. 2d 59, 66 (1959); *Melendrez v. D & I Investment, Inc.*, 127 Cal. App. 4th 1238, 1251 (Cal. App. 2005).

Under California law, a *bona fide* purchaser without actual or constructive notice takes free of a prior equitable interest or constructive trust interest. *In re Tleel*, 876 F.2d 769, 771-72 (9th Cir. 1989); *Rafftery v. Kirkpatrick*, 29 Cal. App. 2d 503, 507-508 (Cal. App. 1938). Section 544(a)(3) of the Bankruptcy Code makes a trustee's actual knowledge irrelevant. A purchaser of real estate for value without constructive notice of a prior interest is given status as a *bona fide* purchaser. *Tleel*, 876 F.2d at 772. Constructive notice in the context of real estate is provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214; 3 Harry D. Miller & Marvin B. Starr, *California Real Estate* §§ 8:62, 8:63, 8:65 (2d ed. 1989).

## A.    Section 544(a)(3) of the Bankruptcy Code Authorizes the Plaintiff to Avoid Barbara Klein's Alleged Life Estate in the June St. Property

As a *bona fide* purchaser for value, section 544(a)(3) provides the Trustee with a senior ownership interest in the June St. Property because as of the Petition Date, the Debtor, through the

Klein Living Trust, owned (and continues to own) 100% of the June St. Property.  To the extent that

Barbara had any interest in the June St. Property pursuant to the Amendment to the Premarital

Agreement, such interest was unrecorded as of the Petition Date.[69] As a result, the Trustee, on behalf

of the Debtor's estate, may avoid the unrecorded interest that Barbara might hold in the June St.

Property because the Trustee as a *bona fide* purchaser holds a senior and perfected interest in the

June St. Property under section 544(a)(3) of the Bankruptcy Code .

Agreements regarding the formation or dissolution of a marriage that affect real property are

not enforceable against a bankruptcy estate unless the rights under such agreement are perfected by

recordation in accordance with applicable state law.  *See, e.g.*, *Perlow v. Perlow*, 128 B.R. 412, 415

(E.D.N.C. 1991) (a court approved marital dissolution agreement that provided a spouse with an

interest in real property may be avoided under section 544(a)(3) of the Bankruptcy Code if it is not

recorded prior to the debtor/former spouse's bankruptcy); *In re Fisher*, 67 B.R. 666, 669 (Bankr. D.

Colo. 1986) (same).

The Trustee, as a hypothetical *bona fide* purchaser for value of the June St. Property (as of

the Petition Date) when looking at the duly recorded real estate records of the June St. Property

would not have had constructive notice of Barbara's alleged interest in the June St. Property because

the Amendment to the Premarital Agreement was never recorded.[70]  The only and the most recently

recorded deed relating to the June St. Property reflects that on or about July 8, 1977, the June St.

Property was granted to Leslie Klein and Erika Noemi Klein, as Trustees under the Klein Living

Trust of 1975, which as amended is now the Klein Living Trust.[71]

Barbara and the other Defendants have not produced any other documents reflecting

Barbara's interest in the June St. Property. To the extent there are any other documents, they are not

recorded in accordance with California law, which means any such interest is junior to the estate's

and may be avoided.  Thus, the Trustee, pursuant to 11 U.S.C. § 544(a)(3), holding the rights and

powers of a *bona fide* purchaser of real property as of the Petition Date may avoid the unrecorded

---

[69] Lucas Declaration, **Exhibit 3**, Nos. 2 and 3.
[70] Lucas Declaration, **Exhibit 3**, Nos. 2 and 3.
[71] Request for Judicial Notice, **Exhibit H** and Lucas Declaration, **Exhibit 5**, No. 1.

interests in the June St. Property under the Amendment to the Premarital Agreement and any other agreements written or oral that might exist but were not produced by the Defendants.

**B.**     **Section 544(a) of the Bankruptcy Code Authorizes the Plaintiff to Avoid the MDT's Interest in the June St. Property**

As a *bona fide* purchaser for value, section 544(a)(3) provides the Trustee with a senior ownership interest in the June St. Property because at the time the petition was filed, the Debtor, through the Klein Living Trust, owned 100% of the June St. Property.  The Debtor will surely argue that the Trustee is not a *bona fide* purchaser for value under section 544(a)(3) of the Bankruptcy Code because he alleges that the Property is entirely owned by the MDT, which was purportedly created and funded in connection with the death of Erika Klein on or around December 2012.[72] However, the Trustee is not aware nor was there anything produced by the Defendants reflecting that the MDT was granted any interest in the June St. Property.[73]  Even if there was a valid and enforceable writing, it was never recorded and as a result may be avoided by the Trustee.

The Debtor admitted in the SOFAs that in the ten years prior to the Petition Date he had not transferred any property from his estate to a self-settled trust or similar type of trust.[74] The Klein Living Trust, the MDT, and Survivor's Trust are self-settled trusts (*i.e.*, it was created by the Debtor, administered by the Debtor as trustee, and the Debtor is the sole income and principal beneficiary of the MDT).[75] Under penalty of perjury, the Debtor represented to the Court that he had not transferred any interest in real property to a trust.  Now that the Trustee is seeking to quiet title of the June St. Property or avoid the transfer, the Debtor contends that the estate's interest in the June St. Property was transferred to the MDT. There is no valid and enforceable documentation reflecting that the June St. Home is owned by any other party than the Klein Living Trust.

As stated above, the Trustee, on behalf of the estate, holds a senior and perfected ownership interest in the June St. Property because the alleged MDT's interest in the Property is not memorialized in a valid and enforceable writing and recorded in accordance with applicable law. Under California law, "No trust in relation to real property is valid unless created or declared:  1. By

---

[72] Lucas Declaration, **Exhibit K**, Para. 11.
[73] *See* Sections IV and V, *supra*, regarding the transfer requirements of real property under California law.
[74] Request for Judicial Notice, **Exhibit F**, SOFA Pt. 7.19.
[75] Request for Judicial Notice, **Exhibit I**, Art. 2, Art. 4, and Art. 5.

a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing; 2. By the instrument under which the trustee claims the estate affected; or, 3. By operation of law." *Bier v. Leisle*, 172 Cal. 432, 435 (1916). Debtor has not proffered any writing to substantiate that the MTD owns all or any interest in the June St. Property nor has Debtor produced any other documents that reflect an ownership in the June St. Property that cannot be avoided by the Trustee.

Further, even if there is a writing that purports to convey the June St. Property to the MDT, that writing is not valid and enforceable and not recorded and is thus avoidable by the Trustee. The Trustee, as a hypothetical *bona fide* purchaser for value of the June St. Property (as of the Petition Date) when looking at the duly recorded real estate records of the June St. Property would not have had constructive notice of the MDT's alleged interest in the June St. Property because it was never recorded.

**C.    Section 544(a)(3) of the Bankruptcy Code Entitles the Plaintiff to Avoid Survivor's Trust's Alleged Interest the June St. Property**

As a bona fide purchaser for value, section 544(a)(3) provides the Trustee with a senior ownership interest in the June St. Property because at the time the petition was filed, the Debtor, through the Klein Living Trust owned 100% of the June St. Property. Debtor will surely argue that the Trustee is not a *bona fide* purchaser for value under section 544(a)(3) of the Bankruptcy Code because he alleges that the Property is entirely owned by the MDT, which was purportedly created and funded in connection with the death of Erika Klein on or around December 2012 as a successor to the Klein Living Trust.[76]

However, Debtor admitted in the SOFAs that in the ten years prior to the Petition Date he had not transferred any property from his estate to a self-settled trust or similar type of trust.[77] The Survivor's Trust is a self-settled trust (*i.e.*, it was created by the Debtor, administered by the Debtor as trustee, and the Debtor is the sole income and principal beneficiary of the MDT).[78] Under penalty of perjury, the Debtor represented to the Court that he had not transferred any interest in real property to a trust. Now that the Trustee is seeking to quiet title of the June St. Property or avoid the

---

[76] Lucas Declaration, **Exhibit K**, Para. 11.
[77] Request for Judicial Notice, **Exhibit F**, SOFA Pt. 7.19.
[78] Request for Judicial Notice, **Exhibit I**, Art. 4.

1   transfer, the Debtor contends that the estate's interest in the June St. Property was transferred to the

2   MDT. There is no valid and enforceable documentation reflecting that the June St. Home is owned

3   by the MDT or any other trust created under the Klein Living Trust.

4   　　　The Trustee maintains a senior ownership interest in the June St. Property because the

5   alleged Survivor's Trust interest in the Property is not memorialized in writing and recorded in

6   accordance with appliable law.  Under California law, "No trust in relation to real property is valid

7   unless created or declared: 1. By a written instrument, subscribed by the trustee, or by his agent

8   thereto authorized by writing; 2. By the instrument under which the trustee claims the estate

9   affected; or, 3. By operation of law." *Bier v. Leisle*, 172 Cal. 432, 435(1916).  Debtor has not

10  proffered any writing to substantiate that the Survivor's Trust owns all or any interest in the June St.

11  Property nor has Debtor produced any other documents that reflect an ownership in the June St.

12  Property that cannot be avoided by the Trustee.

13  　　　Further, even if there is a valid and enforceable writing that purports to convey the June St.

14  Property to the Survivor's Trust, that writing was not recorded and is thus voidable by the Trustee.

15  The Trustee, as a hypothetical *bona fide* purchaser for value of the June St. Property (as of the

16  Petition Date) when looking at the duly recorded real estate records of the June St. Property would

17  not have had constructive notice of the Survivor's Trust alleged interest in the June St. Property

18  because it was never recorded.

19  **D.    The Undisputed Facts Indicate That the Trustee Is Entitled to Recover the June St.**
20  **Property from the Debtor Pursuant to Section 550 of the Bankruptcy Code**

21  　　　Section 550 of the Bankruptcy Code sets forth that:

22  　　　　　to the extent that a transfer is avoided under section 544. . .
        [or] 548 . . . of this title, the trustee may recover, for the
23  　　　　　benefit of the estate, the property transferred, or, if the court so
        orders, the value of such property, from - . . . the initial
24  　　　　　transferee of such transfer or the entity for whose benefit such
        transfer was made ….

25  11 U.S.C. § 550.

26  　　　Indisputably, as discussed above, the Trustee believes that the Debtor's estate owns the entire

27  June St. Property.  However, to the extent that Barbara, MDT, or the Survivor's Trust hold any

28

interest in the June St. Property, the Trustee, pursuant to section 550 of the Bankruptcy Code, is entitled to recovery the June St. Property from any of the foregoing Defendants.  The Trustee requests that the Court enter an order accordingly, granting the Trustee summary judgment entitling the Trustee to recover the June St. Property from any of the foregoing Defendants.

## VII.

## DEFENDANTS' DEFENSES ARE UNSUBSTANTIATED AND WITHOUT LEGAL MERIT

All asserted Affirmative Defenses are irrelevant and/or invalid:

Defense (¶ 11):  "Leslie Klein, as trustee of the MDT, acquired from Leslie Klein, as trustee of the Survivor's Trust, all of the Survivor's Trust 50% interest in the June Property as a bona fide purchaser for value.  As a result, Leslie Klein, as trustee of the MDT, owns all right, title and interest in the June Street Property and neither the Survivor's Trust nor the bankruptcy estate holds any interest in the June Street property, except for Leslie Klein's life estate."

Plaintiff's Response:

The rights of a bona fide purchaser are defined by state law.  *In re Tleel*, 876 F.2d 769, 772 (9th Cir. 1989); *In re Deuel*, 594 F.3d 1073, 1078-1079 (9th Cir. 2010); *In re Seaway Express Corp.*, 912 F.2d 1125, 1128 (9th Cir.1990).  Under California law a *bona fide* purchaser's interest in property takes priority over an unrecorded prior-in-time deed of trust.  Civil Code section 1214 provides that "[e]very conveyance of real property . . . is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action."

None of the Defendants have been able to show, in a valid and enforceable writing, that the MDT holds any interest in the June St. Property.  There are no valid and enforceable documents reflecting the transfer to the MDT. In fact, the Debtor admitted in the SOFAs that in the ten years prior to the Petition Date that he had not transferred any property from his estate to a self-settled trust or similar type of trust.[79] The MDT is a self-settled trust (*i.e.*, it was created by the Debtor, administered by the Debtor as trustee, and the Debtor is the sole income and principal beneficiary of

---

[79] Request for Judicial Notice, **Exhibit F**, SOFA Pt. 7.19.

the MDT).[80] First, the Debtor represented to the Court that he had not transferred any interest in real property to a trust. But now that the Trustee is seeking to quiet title of the June St. Property or avoid the transfer, the Debtor contends that the estate's interest in the June St. Property was transferred to the MDT.

Assuming there are valid and enforceable documents reflecting the transfer of the June St. Property to the MDT, those documents were not recorded prior to the Petition Date. As a result, the Trustee, on behalf of the estate, holds a senior interest in the June St. Property. Thus, the Defendants' defense should be overruled because it is unsubstantiated and without any legal merit.

## VIII.

## <u>CONCLUSION</u>

For all of the reasons set forth herein, the Plaintiff is entitled to summary judgment on all of the claims for relief as set forth in the Complaint. In that regard, the Court should enter a judgment in favor the Trustee that the June St. Property is owned by the Debtor and is property of the estate, or, alternatively, that any interest held by Barbara, MDT, or the Survivor's Trust may be avoided by the Trustee pursuant to section 544(a)(3) of the Bankruptcy Code and recover the June St. Property pursuant to section 550 of the Bankruptcy Code.

Dated:    September 20, 2024    PACHULSKI STANG ZIEHL & JONES LLP

By    _/s/ John W. Lucas_
John W. Lucas

Attorneys for Plaintiff, Bradley D. Sharp,
Chapter 11 Trustee

---

[80] Request for Judicial Notice, **<u>Exhibit I</u>**, Art. 5, p. 10.